IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CFM COMMUNICATIONS, LLC,<br><br>            Plaintiff,<br><br>    vs.<br><br>MITTS TELECASTING COMPANY,<br><br>            Defendant. | No. CV-F-04-6111 REC DLB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION.<br><br>(Doc. 37) |

On July 11, 2005, the Court heard Plaintiff's motion for partial reconsideration of the Court's order granting summary adjudication as to certain issues in favor of Defendant but denying summary judgment. Upon due consideration of the written and oral arguments of the parties and the record herein, the Court GRANTS the motion as set forth below.

**I.  Factual Background**

The factual background of this case is lengthy and is set forth in full in the "Order granting in part and denying in part Defendant's motion for summary judgment, or, in the alternative, summary adjudication." See Doc. 35 ("Summary Judgment Order"). However, certain pertinent facts will be restated here.

1

Plaintiff CFM Communications, LLC ("CFM" or "Plaintiff") claims that it has a valid purchase option contract for television station KXVO(TV) Channel 15 in Omaha, Nebraska (the "Station"). Defendant Mitts Telecasting Company ("MTC" or "Defendant") argues that the option contract is unenforceable.

Pappas Telecasting of the Midlands ("Pappas" or "PTM") held the FCC license for KKVO(TV). Because current FCC regulations prohibit one owner from holding more than one license in any given area, Pappas has had to employ middlemen to "own" the station. Gary Cocola held the station for Pappas from 1994 - 1999, during which time Pappas held a promissory note in its favor (the "Cocola Note"). The Cocola Note provided that the note holder could require Mr. Cocola to form a limited partnership with the note holder and that the note holder, who would be the general partner, could require Mr. Cocola to convey his interest in the station at any time with proper notice.

In 1999, Pappas assigned its interest in the Cocola Note to Defendant MTC via a "Note Power and Assignment." The Note Power and Assignment gave MTC the right to force Mr. Cocola to form a limited partnership and then sell to MTC his share of the limited partnership, which would effectively result in MTC purchasing the Station. MTC paid $972,500 for the assignment; the station had an appraised value of approximately $18 million.

At the same time, Pappas executed an "Option Agreement" with MTC, which is the focus of this litigation. The Option Agreement provided for three scenarios by which Pappas could exercise a

2

purchase option; MTC had a put option that contained similar language.  The Option Agreement stated:

> (a) MTC hereby grants to Pappas or its assignee an exclusive and irrevocable option (the "Purchase Option") as follows:
>
> (i) If, at the time the Purchase Option is exercised, MTC has not acquired any interest in the Partnership or the assets used in connection with the Station pursuant to the 97% Option or the 3% Option, then Pappas shall have the option to acquire from MTC the Note, including all of MTC's rights under the 97% Option and the 3% Option, for a price equal to $425,000, plus or minus the CPI Adjustment as defined below (the "Note Exercise Price"); or
>
> (ii) If, at the time the Purchase Option is exercised, MTC has acquired, pursuant to the 97% Option, the 97% general partner interest in the Partnership, but has not acquired the 3% limited partner interest in the Partnership, then Pappas shall have the option to acquire from MTC all of MTC's interest in the Partnership, plus MTC's rights under the 3% Option, for a price equal to $425,000, plus or minus the CPI Adjustment as defined below (the "Partnership Interest Exercise Price"); or
>
> (iii) If, at the time the Purchase Option is exercised, MTC has acquired, pursuant to the 97% Option and the 3% Option, all of the FCC authorizations and other assets used by Cocola in the operation of the Station, then Pappas shall have the option to acquire from MTC all of such authorizations and other assets for a price equal to $425,000, plus the amount for which MTC acquired the 3% interest in the Partnership from Cocola, plus or minus the CPI Adjustment (the "Station Assets Exercise Price").

The Option Agreement provides that the purchase option is exercisable for seven years after the effective date, which is on or about November 5, 1999.

After the assignment was completed, MTC notified Mr. Cocola of its intent to exercise its rights under the Cocola Note such that the limited partnership would be formed and MTC would

3

exercise its right to compel Mr. Cocola to sell his interest, approximately 3%, to MTC.  The partnership was never formed and Mr. Cocola separately conveyed his interest in the Station to MTC.  One of the conditions of the single step transaction was the approval of Pappas.  Pappas gave its consent and the transaction was finalized on August 4, 2000.

In August of 2003, Pappas sent a letter to MTC purporting to exercise the purchase option.  In February of 2004, Pappas assigned its rights under the Option Agreement to Plaintiff CFM. Sometime after MTC was notified of Pappas' assignment, MTC informed CFM that the Option Agreement was unenforceable.

**II.  Procedural Background & Current Motion**

MTC moved for summary judgment on the grounds that the Option Agreement became unenforceable as a matter of law after the agreement between MTC and Cocola was finalized because the formation of the Cocola Limited Partnership was a condition precedent to the Purchase Option being exercisable.  MTC also argued that the CFM's theories of novation, waiver, and estoppel failed as a matter of law.

The Court granted the motion as to the issues of condition precedent, novation and estoppel, and denied it as to the issues of waiver and modification.  CFM moves the Court to reconsider only the first issue on which summary adjudication was granted. CFM argues that 1) it was improper that summary adjudication as to discrete issues was awarded when only summary judgment was requested; 2) the Court failed to consider the overall intent of

4

1  the option contract, which was to facilitate the sale of the
2  station; 3) the Court failed to consider the fact that the same
3  language existed in the Put Option, and the effect of that on the
4  overall interpretation of the contract; and 4) forfeiture or
5  manifest injustice will result if the contract language is viewed
6  a condition precedent.

7  MTC argues that although it did not entitle its motion as
8  one for summary judgment or, in the alternative, summary
9  adjudication, it was nonetheless apparent that MTC sought
10 determination of discreet issues.  MTC also argues that the Court
11 properly interpreted the Option Agreement and that the formation
12 of the Cocola Limited Partnership was a condition precedent to
13 the Purchase Option being exercisable.

**III.  Legal Standard**

15 Local Rule 78-230(k) governs motions for reconsideration of
16 non-final orders.  The party moving for reconsideration must set
17 forth the material facts and circumstances surrounding the motion
18 including:

> (3) what new or different facts or circumstances are
> claimed to exist which did not exist or were not shown
> upon such prior motion, or what other grounds exist for
> the motion, and
>
> (4) why the facts or circumstances were not shown at
> the time of the motion.

E.D. Cal. R. 78-230(k).

A court is also guided by the principles generally applicable to motions for reconsideration.  Although motions for reconsideration are disfavored, reconsideration is appropriate if

5

1 the court "committed clear error or if the initial decision was
2 manifestly unjust." School District No. 1J, Multnomah County v.
3 ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).  However, a
4 motion for reconsideration is not the place for a party to make
5 new arguments that were not raised earlier or to rehash earlier
6 arguments.  See Christie v. Iopa, 176 F.3d 1231, 1239 n.5 (9th
7 Cir. 1999); Northwest Acceptance Corp. v. Lynnwood Equip., Inc.,
8 841 F.2d 918, 925-26 (9th Cir. 1988); United States v. Navarro,
9 972 F. Supp. 1296, 1299 (E.D. Cal. 1997).

10 **IV.  Discussion**

11     **A.   Propriety of Summary Adjudication as to Discrete Issues**

12     CFM argues that MTC did not seek summary adjudication as to
13 discreet issues and that the Court erred in granting it.  CFM
14 acknowledges that a district court has the inherent power to
15 grant summary judgment *sua sponte*, but asserts that the Summary
16 Judgment Order was inappropriate because it did not state that
17 the Court was relying on this inherent power.

18     MTC argues that it sought summary judgment as to two
19 discrete issues: 1) that the Option Agreement was unenforceable
20 as a matter of law, and 2) that CFM's arguments regarding waiver,
21 estoppel and novation failed as a matter of law.

22     Rule 56 of the Federal Rules of Civil Procedure
23 "anticipates that a court may decide only some of the claims, or
24 even merely parts of claims" on a motion for summary judgment.
25 11 Moore's Federal Practice, § 56.40[1] (3d ed. 2005).  In
26 California Dep't of Toxic Substances Control v. Intersate Non-

Ferrous Corp., 298 F. Supp. 2d 930, 939 (E.D. Cal. 2003), the court stated:

> The purpose of Rule 56(d) is to salvage some results from the judicial effort involved in evaluating a summary judgment motion and to frame narrow triable issues if the court finds that the order would be helpful with the progress of litigation.

A court has "authority to grant summary judgment on specific issues and need not adjudicate all of the claims in the case." Mateo v. M/S Kiso, 805 F. Supp. 792, 798 (N.D. Cal. 1992).

CFM's argument for reconsideration on this basis is unpersuasive. MTC made separate and discreet arguments in its motion and sought summary judgment as to various issues. To the extent CFM is correct that the Summary Judgment Order may have mistitled MTC's motion, it is irrelevant. It is unarguable that when faced with a motion for summary judgment, a district court may grant the motion in part, i.e. partial summary judgment. Partial summary judgment is synonymous with summary adjudication. See Black's Law Dictionary (8th ed. 2004). Reconsideration on this basis is DENIED.

**B. Purpose and Structure of the Option Agreement**

**1. The Prior Ruling**

MTC was granted summary adjudication (partial summary judgment) as to the issue of whether the formation of the Cocola Limited Partnership was a condition precedent to the option being exercisable. See Summary Judgment Order at 12. The Court found that the "if . . . then" language in the Option Agreement indicated the existence of a condition precedent and rejected

1  CFM's argument that the Pappas could acquire substantially all of
2  the Station's assets other than through the formation of the
3  Partnership.  Id.

### 2. The Parties' Positions

5  CFM argues that the Court misapplied applicable law by
6  strictly construing the "if . . . then" language as words of
7  condition because conditions precedent are disfavored and there
8  are no "magic words" that create such conditions.  CFM argues
9  that the Court's interpretation goes against the intent of the
10 parties and a forfeiture or inequity would result.  CFM also
11 asserts that the existence of the Put Option and the language of
12 the subsections at issue indicate that those clauses were merely
13 a framework for the transfer of assets and that the parties
14 intended that both options "could be exercised at any time,
15 irrespective of MTC's interest in the station at the time the
16 Options were exercised."  Pl.'s Mot. at 3.

17 CFM further argues that "[w]ords literally appropriate for
18 condition have often not been given their natural meaning,
19 especially where the result of such an interpretation would lead
20 to injustice and a violation of the probable intent of the
21 parties."  13 Williston on Contracts § 38:13 at 427-28 (4th ed.
22 2000).  CFM argues that the literal language of an instrument
23 should be construed against finding a condition where a
24 forfeiture will result.  CFM characterizes the Purchase Option as
25 a right subject to forfeiture and asserts that if MTC is allowed
26 to acquire the Station for a fraction of its value and, at the

8

same time, deprive CFM of its Purchase Option, it would be both inequitable and a forfeiture.

MTC argues in response that the Court's construction of the language was correct and that CFM is rehashing the arguments it raised in opposition to summary judgment. MTC asserts that the "words of a contract are to be understood in their ordinary and popular sense. We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." Def.'s Opp'n at 10 (quoting Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal. App. 4th 944, 955 (2003)). MTC points out that the intent of the parties is determined from the time the contract is made and is not influenced by subsequent changes in circumstances, i.e. Mr. Cocola's desire to forego the formation of the limited partnership.

MTC argues that CFM's argument regarding forfeiture fails because the parties contemplated the condition and that "the parties are entitled to the benefit of their bargain, and the mere fact it turns out to have been a bad bargain for one of the parties does not justify, through artful interpretation, changing the clear meaning of the parties' words." Id. (quoting 13 Williston on Contracts § 38:13).

### 3. Analysis

CFM's assertion as to the legal issue regarding words of condition is persuasive. California law supports a presumption

1  against creating a condition precedent.  8-30 Corbin on Contracts
2  § 30.14.  As stated by the California Court of Appeal:

> Conditions precedent are not favored in the law and the provisions of a contract will not be construed as conditions precedent <u>absent language plainly requiring such construction</u>.  This is particularly true when a strict construction works a forfeiture.  Whether a provision constitute[s] a condition or a covenant is determined from the whole document, its purpose and the intention of the parties.

<u>Pacific Allied v. Century Steel Products, Inc.</u>, 162 Cal. App.2d 70, 80 (1958) (citations omitted) (emphasis added).

The Supreme Court has held that the phrase "upon condition that" does not necessarily create a condition.  <u>Green County v. Quinlan</u>, 211 U.S. 582, 594 (1909).  Similarly, the California Supreme Court in <u>Diepenbrock v. Luiz</u>, 159 Cal. 716, 718 (1911), stated that terms such as "upon the express condition" and "provided" do not always result in a condition.  Rather, a purported conditional clause in a contract "is to be construed from the words employed and *from the purpose of the parties, gathered from the whole instrument*."  <u>Id.</u> (emphasis added).

Here, the purpose of the Option Agreement was to grant a Purchase Option and a Put Option in favor of Pappas (CFM) and MTC, respectively.  As stated in the Option Agreement, "MTC now desires to grant to Pappas an irrevocable option to acquire . . . substantially all the assets . . . used in the operation of the station."  Owdom Decl. Ex. E at 1.  This language supports the claim that the subsections specifying the transfer, including the one at issue here, were merely a framework for payment rather

10

than a condition.  Additionally, withholding a determination as to the existence of a condition precedent is especially appropriate where, as here, a forfeiture could result from such determination.  The forfeiture here is speculative because, as the Summary Judgment Order discussed, there are questions of fact relevant to the issues of modification and waiver of any condition.

A closer inspection of the Option Agreement also reveals the following inconsistency regarding the intent of the parties. Section (1)(c) of the Agreement specifies that the Purchase Option "shall be exercisable <u>at any time</u> during the period (the 'Option Period') beginning on the date of this Agreement (the 'Effective Date') and ending" in seven years.  Owdom Decl. Ex. E at 4 (emphasis added).  This section contains no restrictions or conditions.  To the contrary, it affirmatively defines the Option Period as being seven years, thereby undermining the assertion that formation of the Cocola Limited Partnership was a condition precedent.  This inconsistency within the four corners of the document renders relevant an inquiry into the parties' intent in drafting and adopting the Option Agreement.

In sum, based on the presumption against conditions precedent and the purpose and terms of the Option Agreement, it was inappropriate for the Court to grant summary adjudication as to the condition precedent issue.  It was also unnecessary to the determination of the issues on which summary adjudication was awarded; the issue should have been assumed for purposes of

11

1  deciding the motion.
2      **ACCORDINGLY,** Plaintiff's motion for reconsideration is
3  hereby GRANTED.
4      **FURTHER ORDERED** that the Summary Judgment Order, Doc. 35, is
5  reconsidered to the extent that Defendant's request for summary
6  judgment is hereby DENIED IN PART as to the issue of the
7  existence of a condition precedent.
8
9  IT IS SO ORDERED.
10 **Dated:  August 29, 2005**             /s/ Robert E. Coyle
   ia40ij                                UNITED STATES DISTRICT JUDGE